1

2

3

4       UNITED STATES DISTRICT COURT

5       EASTERN DISTRICT OF WASHINGTON

6

7   ETCO SERVICES, LLC, an Idaho        )
    limited liability company,          )

8                                       )   No. CV-11-042-LRS
                       Plaintiff,       )
9                                       )   **ORDER RE SUMMARY**
                                        )   **JUDGMENT MOTIONS**
10          vs.                         )
                                        )
11  KILLIAN CONSTRUCTION               )
    CO., dba KILLIAN                    )
12  CONSTRUCTION, INC.,                 )
    a Missouri corporation,             )
13                                      )
                       Defendant.       )
14  _____)

15          **BEFORE THE COURT** is the Defendant's Motion For Summary Judgment

16  (ECF No. 47) and Plaintiff's Motion For Partial Summary Judgment (ECF No. 54).

17  These motions were heard with oral argument on March 15, 2012. Kevin W. Roberts,

18  Esq., argued for Plaintiff.    Paul R. Cressman, Esq., argued for Defendant.

19

20  **I. BACKGROUND**

21          This is a diversity action removed from Spokane County Superior Court.

22  Plaintiff alleges Defendant violated RCW 39.30.060 by not providing Plaintiff with

23  the plumbing subcontract with regard to the construction of a new residence hall at

24  Central Washington University (CWU).   Plaintiff alleges Defendant substituted a

25  different subcontractor in furtherance of bid shopping/bid peddling. This is the sole

26  cause of action remaining for adjudication, the parties having stipulated to a voluntary

27  dismissal of all of the other causes of actions pleaded in Plaintiff's Complaint. (See

28  ECF No. 45).

**ORDER RE SUMMARY**
**JUDGMENT MOTIONS-        1**

Plaintiff seeks summary judgment finding Defendant liable as a matter of law for violating RCW 39.30.060, with the issue of damages left for trial. Defendant has filed a cross-motion for summary judgment seeking a ruling as a matter of law that it is not liable.

**II. FACTS**

Plaintiff ETCO Services, LLC, (ETCO) is a subcontractor that performs predominantly Plumbing and HVAC (Heating, Ventilation, Air Conditioning) work in Washington and Idaho.

Defendant Killian Construction Co. (Killian) is a Missouri corporation that acts as a general contractor on construction projects throughout the United States.

On or about September 16, 2010, Central Washington University (CWU) advertised for bids for the abatement and demolition of an existing building, along with the construction of a new residential hall. Sealed bids were required to be provided by 3:00 p.m., Thursday, October 21, 2010. Bidders then had until 4:00 p.m. to submit bids on alternates and to list the required subcontractors. Bids were to then be opened shortly after 4:00 p.m.

On October 21, 2010, ETCO provided Killian with a subcontract bid for Plumbing and Hydronics only. It did not include HVAC and Controls work. It proposed doing the Plumbing and Hydronics work for $5,052,000.00. It bid alternates, as well: Alternate #2 (Solar Hot Water) for $175,000, and Alternate #10 (Multi-purpose building) for $72,000.00. The total bid, with alternates, was $5,299,000.00.

On October 21, 2010, JRT Mechanical (JRT) provided Killian with a subcontract bid to perform Plumbing, HVAC and Controls work. The base bid was $5,500,000, and with all alternates, totaled $5,963,000.

On October 21, 2010, Killian submitted a prime contract bid to CWU. Killian certified that pursuant to RCW 39.30.060, if it were the successful bidder, it would

**ORDER RE SUMMARY
JUDGMENT MOTIONS-    2**

use ETCO as a subcontractor to perform the "Plumbing" scope of work.  It also certified ETCO as the subcontractor it would use for the "HVAC" and "Controls" portion of the work.  Killian's bid was for $19,387,000, not including alternates. Killian ended up being the low bidder for the project.

On October 21, 2010, JRT contacted Killian.  After Killian confirmed it had been "read as low" and informed JRT it was going to "evaluate them [subcontract] bids closer, JRT advised Killian to "verify [your] low guy is carrying the controls," a reference to ETCO.

Although ETCO had only provided a bid for the Plumbing scope of work, Killian had also listed ETCO as the subcontractor for the HVAC and the Controls.

Scott Hotsinpiller, a former employee of Killian, was responsible, on behalf of Killian, for reviewing and compiling subcontractor bids for the Plumbing, HVAC, and Controls scopes of work for the CWU project.

On the evening of October 21, 2010, Hotsinpiller discovered that ETCO's subcontract bid did not include a complete scope of all Plumbing, HVAC and Controls work.

On Friday, October 22, 2010, Hotsinpiller called ETCO's Estimator and Project Manager, Jason Wheelan, and notified him that Killian had listed ETCO for the Plumbing, HVAC, and Controls work for the project.

Wheelan subsequently sent then-Killian employee, Scott Ward, an e-mail on October 22, 2010, stating he would be "working on" the situation "thru the weekend," and would "make every effort to deliver a revised proposal by Monday morning."

As the job specifications existed, ETCO could not have performed a complete scope of Plumbing, HVAC and Controls work for the project for $5,052,000 as had been listed by Killian.

Wheelan and ETCO's Owner and General Manager, Howard Rude, discussed Wheelan's October 22, 2010 e-mail before Wheelan sent it to Killian.

**ORDER RE SUMMARY
JUDGMENT MOTIONS-        3**

1    Rude subsequently notified Wheelan that same day that Rude was "taking over
2    the project."

3    Wheelan did not work through the weekend to come up with a revised proposal
4    for Killian because Rude had assumed responsibility. ETCO did not deliver a revised
5    proposal to Killian on "Monday morning."

6    On October 29, 2010, JRT contacted Killian asking if it was "able to change
7    your listing for the Mechanical?" On November 1, 2010, Killian indicated
8    Hotsinpiller was "working on that."

9    On the evening of November 1, 2010, JRT provided Killian with a "new
10   proposal."

11   A day later, on November 2, 2010, at Killian's request, JRT provided Killian
12   with a "revised proposal" that was less than its original bid of $5,963,000 with
13   alternates in that JRT was able to deduct $20,000 from Alternate #10 ("Multi-purpose
14   building").

15   Shortly after receiving the "revised proposal," Killian e-mailed CWU and
16   identified JRT as its "proposed plumbing/HVAC sub" despite the fact Killian had
17   already formally listed ETCO as its subcontractor for those purposes. At this time,
18   Killian had already been awarded the prime contract by CWU.

19   In correspondence dated November 4, 2010 sent to CWU, Killian requested
20   permission to substitute JRT for ETCO because due to a mistake, Killian did not
21   realize that ETCO was not bidding a "complete mechanical scope."

22   By letter dated November 7, 2010, ETCO provided Killian with an explanation
23   of its qualifications and willingness to provide the services (Plumbing/Hydronics) for
24   which it had submitted its bid. ETCO encouraged Killian to honor its certification
25   that if it was the successful bidder, it would utilize the subcontractors whom it had
26   listed, including ETCO.

27   By letter dated November 8, 2010, CWU responded to Killian's proposal to use
28   JRT in lieu of ETCO "which was listed as HVAC/Plumbing/Controls subcontractor

**ORDER RE SUMMARY
JUDGMENT MOTIONS-          4**

on the bid proposal from Killian Construction."  Attached to the letter was a copy of RCW 39.30.060 which, according to CWU, "is clear that subcontractor substitutions are only allowed for five situations."

On November 9, 2010, Killian's Project Manager (Craig Ericson) sent a letter to Killian's Vice President (Scott Ward) explaining that "we listed ETCO on the certification form to CWU as our M/P [Mechanical/Plumbing] contractor, however, JRT gave us a more complete scope for a better price" and "CWU will not give us permission to change until we work things out with ETCO."  Ericson stated "it looks like [ETCO] can be bought out."

In response to an e-mail dated November 10, 2010 from JRT as to whether Killian had "heard anything yet," Killian advised that it was "working on this issue as we speak" and hoping to "get it resolved very soon."

In an e-mail to Scott Ward on November 11, 2010, Howard Rude of ETCO, "in response to our conversation yesterday," indicated ETCO was "in the process of reviewing every viable option in an effort to meet your budget restraints" and provided Killian with a "preliminary breakdown of Option #1 for your review," which included the following: 1) Plumbing/hydronic system- $3,996,000.00; 2) HVAC systems- $2,078,065.00; 3) DDC Controls- $1,167,000.  The total was $7,241,065.00.

In another e-mail to Ward on November 11, 2010, Rude offered to provide any information to confirm ETCO's financial strength and offered to provide payment and performance bonds if necessary.

In a letter dated November 16, 2010 to Rude, Ward advised it would not be able to accept ETCO's proposal and noted that ETCO's proposal submitted on bid day (October 21, 2010) "did not include the required complete, combined scope of Plumbing, HVAC and Controls."

On December 21, 2010, Killian entered into a subcontract with JRT to provide "all material, equipment and labor necessary for a complete Plumbing, Hydronics and

**ORDER RE SUMMARY**
**JUDGMENT MOTIONS-        5**

1   HV/AC Systems per the Project plans and specifications." The base amount of the
2   subcontract was $5,446,000, and with CWU approved alternates, totaled $5,910,000.
3       On November 29, 2010, Killian entered into a contract with CWU to perform
4   the work for $19,387,000.00 (without alternates), the same amount as its October 21
5   bid.  With alternates, the total amount of the contract was $21,104,500.00.

6

7   **III.  DISCUSSION**
8       **A.  Summary Judgment Standard**
9       The purpose of summary judgment is to avoid unnecessary trials when there
10  is no dispute as to the facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129
11  (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469 (1975).  Under Fed. R. Civ. P.
12  56, a party is entitled to summary judgment where the documentary evidence
13  produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby,*
14  *Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505 (1986); *Semegen v. Weidner*, 780 F.2d 727,
15  732 (9th Cir. 1985).  Summary judgment is precluded if there exists a genuine dispute
16  over a fact that might affect the outcome of the suit under the governing law.
17  *Anderson*, 477 U.S. at 248.
18      The moving party has the initial burden to prove that no genuine issue of
19  material fact exists. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S.
20  574, 586, 106 S.Ct. 1348 (1986).  Once the moving party has carried its burden under
21  Rule 56, "its opponent must do more than simply show that there is some
22  metaphysical doubt as to the material facts." *Id*.  The party opposing summary
23  judgment must go beyond the pleadings to designate specific facts establishing a
24  genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548
25  (1986).
26      In ruling on a motion for summary judgment, all inferences drawn from the
27  underlying facts must be viewed in the light most favorable to the nonmovant.
28  *Matsushita*, 475 U.S. at 587.  Nonetheless, summary judgment is required against a

**ORDER RE SUMMARY**
**JUDGMENT MOTIONS-        6**

party who fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual disputes regarding other elements of the claim. *Celotex*, 477 U.S. at 322-23.

**B. RCW 39.30.060**

This statute provides in relevant part:

> (1) Every invitation to bid on a prime contract that is expected to cost one million dollars or more for the construction . . . of any public building or public work of . . . an institution of higher education . . . shall require each prime contract bidder to submit as part of the bid, or within one hour after the published bid submittal time, the names of the subcontractors with whom the bidder, if awarded the contract, will subcontract for performance of the work of: HVAC (heating, ventilation, and air conditioning); plumbing . . . ; and electrical . . ., or to name itself for the work. . . . **Failure of the prime contract bidder to submit as part of the bid the names of such subcontractors or to name itself to perform such work or the naming of two or more subcontractors to perform the same work shall render the prime contractor's bid nonresponsive and therefore, void**.

> (2) Substitution of a listed subcontractor in furtherance of bid shopping or bid peddling before or after the award of the prime contract is prohibited and the originally listed subcontractor is entitled to recover monetary damages from the prime contract bidder who executed a contract with the public entity and the substituted subcontractor but not from the public entity inviting the bid. It is the original subcontractor's burden to prove by a preponderance of the evidence that bid shopping or bid peddling occurred. Substitution of a listed subcontractor may be made by the prime contractor for the following reasons:

> (a) Refusal of the listed subcontractor to sign a contract with the prime contractor;

> (b) Bankruptcy or insolvency of the listed subcontractor;

> (c) Inability of the listed subcontractor to perform the requirements of the proposed contract or the project;

> (d) Inability of the listed subcontractor to obtain the necessary license, bonding, insurance, or other statutory requirements to perform the work detailed in the contract; or

> (e) The listed subcontractor is barred from participating in the project as a result of a court order or summary judgment

(Emphasis added).

**ORDER RE SUMMARY JUDGMENT MOTIONS-        7**

1    ETCO asserts the question is whether Killian engaged in bid shopping and/or

2 bid peddling with respect to ETCO's subcontract bid for plumbing only.  ETCO says

3 Killian engaged in bid shopping for a reduced plumbing price; that under Washington

4 law it was obligated to use ETCO for the plumbing work; and that nothing in the

5 statute allows Killian to accept the job based on a mistake and then renegotiate/shop

6 for a lower plumbing bid.   On the other hand, Killian maintains the relevant inquiry

7 is whether it engaged in bid shopping and/or bid peddling with respect to ETCO's

8 subcontract bid as it was listed in Killian's prime contract bid for HVAC, Controls

9 and Plumbing.

10    The court concludes the relevant work for analyzing whether there was bid

11 shopping and/or bid peddling is the Plumbing, HVAC and the Controls.  In its prime

12 contract bid, Killian did not list ETCO as merely the "plumbing subcontractor."

13 ETCO was also listed as the HVAC and Controls subcontractor.  Killian "certified"

14 that if it was the successful bidder, it would utilize ETCO for HVAC, Plumbing and

15 Controls.

16    Killian's prime contract bid was not "non-responsive" and therefore, was not

17 "void" under RCW 39.30.060(1).  All the blanks were filled in on Killian's bid.  It

18 was "fully completed" and responsive.  It named  subcontractors for all the requisite

19 categories of work (HVAC, plumbing and electrical).[1]   Although the bid was

20 "responsive," it was also based on a mistake, described by ETCO as "a regrettable

21

_____

22    [1] The "Form of Proposal" filled out by the bidding prime contractors provided

23 with regard to subcontractors:

24       Per University requirements and RCW 39.30.060, bidders are

25       required to submit the following information regarding the stipulation

       of subcontractors.  If work is not to be subcontracted, each bidder

26       must so indicate by listing itself for each appropriate category of

       work.  Failure to fully complete this section in its entirety will cause

27       the bid to be judged non-responsive.

28

**ORDER RE SUMMARY**
**JUDGMENT MOTIONS-        8**

1  human error," in that it also listed ETCO as the subcontractor on the HVAC and the
2  Controls, even though ETCO's subcontract bid turned out to only be for Plumbing.
3  Killian's prime contract bid listed ETCO as its HVAC subcontractor with a base bid
4  of $5,052,000, and also listed ETCO as its Plumbing and Controls subcontractor and
5  indicated those items were included in the HVAC base bid amount ("with HVAC").
6  "Plumbing," "HVAC" and "Controls" were set forth as separate and distinct scopes
7  of work on the prime contract bid form used by Killian, and Killian listed ETCO as
8  the subcontractor with regard to each.

9      ETCO admits it would not sign a contract with Killian for $5,052,000 for
10 HVAC, Plumbing and Controls as it had been listed in Killian's prime contract bid.
11 Nonetheless, ETCO maintains that because Killian opted to stand by its prime
12 contract bid, "it was obligated to enter into a contract with ETCO for the plumbing
13 scope of work just as certified it would do."  ETCO says that "[a]lthough [Killian]
14 listed ETCO for the HVAC and Controls, a reason for substitution existed since
15 ETCO did not bid those scopes and would not have entered into a sub-contract for
16 those two scoped."

17     In its prime contract bid, Killian certified that it would enter into a contract not
18 just for Plumbing, but also for HVAC and Controls under the mistaken belief that
19 ETCO's subcontract bid included all three scopes.  It is improper for ETCO to parse
20 out the Plumbing component and assert Killian was obligated to enter into a
21 subcontract with ETCO for that work, but was entitled to substitute a subcontractor
22 on the other two scopes (HVAC and Controls) which it turns out ETCO had not
23 included in its bid.  Analyzing whether Killian violated RCW 39.30.060 requires this
24 court to look at how ETCO was listed as a subcontractor in Killian's prime contract
25 bid and does not permit parsing out the plumbing component and viewing it in a
26 vacuum.  ETCO asserts Killian was obligated "by Washington law to stand by its
27 certification to use ETCO for the plumbing work as listed."  Again, one cannot ignore
28 that Killian also certified to use ETCO for the HVAC and Controls work "as listed."

**ORDER RE SUMMARY**
**JUDGMENT MOTIONS-        9**

1   Accordingly, the court finds it was permissible for Killian to substitute JRT for ETCO
2   under RCW 39.30.060(2)(a): "Refusal of the **listed** subcontractor to sign a contract
3   with the prime contractor." (Emphasis added).  In addition, or alternatively, ETCO,
4   as the listed subcontractor, was unable to perform all of the requirements of "the
5   project" which it had been listed to perform and therefore, substitution of JRT as the
6   subcontractor was permissible under RCW 39.30.060(2)(c): "Inability of the listed
7   subcontractor to perform the requirements of the proposed contract **or the project**."
8   (Emphasis added).

9        Furthermore, by its plain language ("substitution of a listed subcontractor may
10  be made by the prime contractor for the following reasons"), the exceptions set forth
11  in RCW 39.30.060(2) do not constitute an exclusive list.  There is no dispute that a
12  mistake caused Killian to list ETCO as the subcontractor for three scopes of work
13  (Plumbing, HVAC and Controls), although ETCO had only offered to perform
14  Plumbing.  This mistake did not result in bid shopping or bid peddling by Killian.

15       Killian did not financially benefit from its substitution of JRT for ETCO.[2]
16  Killian bid the job with CWU on the assumption it would have a subcontract with
17  ETCO for HVAC, Plumbing and Controls in the amount of $5,052,000.  Instead, it
18  ended up with a subcontract with JRT for those same items  (without alternates) in
19  the amount of $5,446,000.[3]    While it is true the base amount Killian ultimately
20  agreed to with JRT was $54,000 less than what JRT had originally bid as a base

21

22  _____

23      [2] It appears to be undisputed that at least five other general contractors
    submitted bids listing JRT to perform the Plumbing, HVAC and Controls scopes
24  of work.  And it is undisputed that ETCO was not listed by any other general
    contractor as the subcontractor for any of those three scopes of work, let alone all
25  three scopes.

26

27      [3] With plumbing alternates, ETCO's bid was $5,299,000 and JRT's bid was
28  $5,910,000.

**ORDER RE SUMMARY**
**JUDGMENT MOTIONS-        10**

amount ($5,500,000), this is inconsequential because the relevant comparison is between what the listed subcontractor (ETCO) bid, and the amount settled upon with the substituted subcontractor. Killian did not "benefit from its mistake," as asserted by ETCO. There were no "savings" for Killian to pass on to CWU. CWU paid the same amount to Killian whether ETCO had been the subcontractor on HVAC, Controls and Plumbing, or with JRT as the subcontractor on those three scopes of work.

Killian did not engage in "bid shopping" because JRT did not submit a bid for HVAC, Plumbing and Controls that was lower than the bid from ETCO that Killian used in calculating its prime contract bid which also ended up being the prime contract price. Bid shopping is defined in Black's Law Dictionary as follows:

> A general contractor's effort- after being awarded a contract- to reduce its own costs by **finding a subcontractor that will submit a lower bid than the one used in calculating the total contract price.** If a lower bid is obtained, the general contractor will receive a windfall profit because the savings are usually not passed on to the property owner.

(9th ed. 2009)(emphasis added).

Killian did not request "revised plumbing prices" from ETCO and JRT. It asked ETCO if it could do HVAC, Plumbing and Controls for $5,052,000 and ETCO said it could not. What ETCO came back with for those three items totaled $7,241,065, broken down as follows: 1) Plumbing/hydronic system- $3,996,000.00; 2) HVAC systems- $2,078,065.00; 3) DDC Controls- $1,167,000. It is true ETCO significantly reduced the price for plumbing/hydronics from the amount contained in its original subcontract bid ($5,052,000) which was for plumbing/hydronics only. This $1,000,000 reduction, however, was more than offset by what ETCO proposed for HVAC and Controls which, of course, Killian mistakenly thought were part of ETCO's original subcontract bid.

There is no evidence that Killian "threatened" ETCO to force it to reduce its price. Although ETCO reduced its price for plumbing/hydronics, it also said it would

**ORDER RE SUMMARY**
**JUDGMENT MOTIONS-        11**

charge $2 million for HVAC and $1 million for Controls.  Killian thought it was getting all three scopes for $5 million and used that figure in making its prime contract bid.  In an apparent effort to rectify the mistake, ETCO increased the price for all three scopes to in excess of $7 million.

Bid peddling is an attempt by a subcontractor to undercut known bids already submitted to the general contractor in order to procure a job.  Killian is not a subcontractor and did not do anything in furtherance of bid peddling.  JRT did not undercut ETCO's bid, as listed, because JRT did not seek to perform three scopes of work for less than ETCO's bid, as listed (JRT:  $5,446,000; ETCO:  $5,052,000).

The facts in the case at bar are distinguishable from the cases cited by ETCO, *C.R. Kirby Contractor's Inc. v. City of Lake Charles*, 606 So.2d 952 (La. App. 1992), involved a failure to list subcontractors for the work.  Here, Killian listed all of the subcontractors and the work they were to perform.  It turned out, however, that Killian made a mistake as to the work ETCO intended to perform pursuant to its subcontract bid.  *McCandlish Electric, Inc. v. Will Constr. Co.*, 107 Wn.App. 85, 25 P.3d 1057(2001), involved an asserted mistake by a general contractor in listing a particular subcontractor.  The general contractor then substituted another subcontractor at a lower price.  Killian does not claim it made a mistake in listing ETCO as a subcontractor.  It claims it listed ETCO for three scopes of work under the mistaken belief that ETCO's subcontract bid was for all three scopes of work, not just Plumbing alone.  Killian's prime contract bid was not incompatible with its true intent.  It did intend to list ETCO as a subcontractor for HVAC, Plumbing and Controls, but it turned out ETCO's subcontract bid was for Plumbing only.  It ended up substituting JRT as a subcontractor for those three scopes at a higher price.

## III.  CONCLUSION

The parties agree there are no disputed issues of material fact.  Based on the undisputed material facts, the court rules as a matter of law that Killian did not violate

**ORDER RE SUMMARY**
**JUDGMENT MOTIONS-          12**

RCW 39.30.060. Legal and equitable considerations compel this result based on the particular factual circumstances involved. Had Killian discovered its mistake before listing ETCO as its subcontractor, ETCO would have never been selected because its original bid did not include HVAC and the Controls for which subcontractor bids had been submitted. ETCO's later November email proposing to do all of the Plumbing/Hydronics/HVAC and Controls work came long after JRT had confirmed its willingness to go forward at its much lower total bid price. Accordingly, ETCO's later proposal which was more than $1,500,000 higher than what JRT had originally bid for the same work does not assist it in its case nor promote the public interest inherent in the bid process. Killian did not benefit from its mistake at the expense of the public.

Killian's Motion For Summary Judgment (ECF No. 47) is **GRANTED** and ETCO's Motion For Partial Summary Judgment (ECF No. 54) is **DENIED**. Judgment is awarded to Killian on Plaintiff's claim under RCW 39.30.060. Killian's Motion To Strike (ECF No. 88) is **DISMISSED** as moot.

**IT IS SO ORDERED**. The District Executive is directed to enter judgment accordingly, forward copies of the judgment and this order to counsel and CLOSE THIS FILE.

**DATED** this___29th___of March, 2012.

*s/Lonny R. Suko*
_____
LONNY R. SUKO
United States District Judge

**ORDER RE SUMMARY
JUDGMENT MOTIONS-      13**